Carlos J. VELARDE, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 91–1709.

United States Court of Appeals,
Seventh Circuit.

Argued April 29, 1992.

Decided Aug. 14, 1992.

Meredith J. Ross, Leo Smith (argued), Legal Assistance to Institutionalized Persons, Madison, Wis., for petitioner-appellant.

Richard H. Lloyd, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Criminal Div., Fairview Heights, Ill., for respondent-appellee.

Before FLAUM, and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

Carlos Velarde was convicted of possessing with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii). He appealed his conviction, challenging the district court's denial of his motion to suppress, and we affirmed. *United States v. Velarde*, 903 F.2d 1163 (7th Cir.1990). He then filed a 28 U.S.C. § 2255 motion with the sentencing court to vacate his conviction. The court summarily denied his motion, and this appeal followed.

Velarde raises the following issues in his habeas petition, none of which were raised on direct appeal: 1) ineffective assistance of trial counsel; 2) ineffective assistance of appellate counsel; 3) denial of a fair trial because of the government's use of allegedly perjured testimony; and 4) denial of the Sixth Amendment right to confront witnesses. Because Velarde's attorney on direct appeal was also his trial counsel, he is not barred from raising his ineffective assistance of trial counsel claim for the first time on post-conviction review. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir.1991) ("trial counsel ... can hardly be expected to challenge on appeal his own ineffectiveness at trial"). Velarde's remaining constitutional claims are waived in this § 2255 proceeding unless he can establish cause for the procedural default and actual prejudice. *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982); *see Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989); *Williams v. United States*, 805 F.2d 1301 (7th Cir.1986), *cert. denied*, 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987). Velarde's sole ground for cause is his counsel's alleged ineffectiveness on appeal. *See Rosenwald v. United States*, 898 F.2d 585, 587 (7th Cir.1990) (ineffective assistance of counsel may itself provide cause for procedural default) (citing *Murray v. Carrier*, 477 U.S. 478, 483, 488–89, 106 S.Ct. 2639, 2642, 2645–2646, 91 L.Ed.2d 397 (1986)).

We turn first to the merits of Velarde's claim of ineffectiveness of trial counsel. To prevail, Velarde must establish that his attorney committed serious errors that fell "below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance," *Strickland v. Washington*, 466 U.S. 668, 688, 690, 104 S.Ct. 2052, 2064, 2066, 80 L.Ed.2d

674 (1984), and "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Failure to satisfy either the performance or prejudice prong of the *Strickland* test is fatal to an ineffectiveness claim. *Chichakly v. United States*, 926 F.2d 624, 630 (7th Cir.1991).

■ The facts underlying Velarde's conviction are set forth in our prior opinion, and we do not repeat them here. Velarde's ineffective-assistance claim centers on the alleged perjury of witness Samuel Jiminez. Jiminez, through an interpreter, testified at trial that he had purchased at Velarde's request the Cadillac which Velarde was driving when he was stopped by the Illinois police officer. He further testified that he had no knowledge of the cocaine found in the vehicle. Velarde's attorney conducted cross-examination, after which he requested the court to keep Jiminez available for recall. The court, without ruling on the request, then took a recess, during which Jiminez, through his interpreter, told the prosecutor that he did in fact have knowledge of the drugs at issue. According to Jiminez, Velarde had asked him to be a middleman in the transaction, given him $90,000 to purchase the six kilos of cocaine, and paid him approximately $1,200 for his assistance in procuring it. The government advised Jiminez of his rights, and Jiminez requested an attorney.

The government then notified the court and the defense of Jiminez's statements. The court held an in-chambers hearing, and appointed a counsel for Jiminez. The defense moved for a mistrial, and the government moved to recall Jiminez to the stand. Shortly thereafter, the court requested Jiminez to appear, and asked him if he would testify further if recalled to the stand. Jiminez responded that he would waive his Fifth Amendment rights only in exchange for a grant of immunity. In light of this, the court refused to allow the government to recall Jiminez. The court did, however, allow Jiminez's previous testimony to stand. Velarde's attorney renewed his request for a mistrial, and, subsequently, raised the issue of the alleged perjury in his motion for a new trial.

Velarde contends that his attorney's performance at trial was constitutionally defective because he did not move to recall Jiminez to the stand for further cross-examination, thereby allowing the allegedly perjured testimony to go unrebutted (and failing to preserve the issue for appeal); did not attempt to introduce Jiminez's out-of-court statements into evidence; and referred to the perjured testimony in his closing argument. According to Velarde, since Jiminez's testimony implicated Velarde, and since Jiminez's out-of-court statements called his credibility into question, the failure to recall Jiminez, or to impeach his testimony through his out-of-court statements, was prejudicial because the jury might otherwise have discounted Jiminez's testimony and found that "all the evidence available incriminated Mr. Jiminez and not Mr. Velarde." Appellant's Br. at 18. Velarde argues in the alternative that "[e]ven if the jury did not conclude that Jiminez was the sole perpetrator of the drug transaction, it may still have had a reasonable doubt about convicting [Velarde]." *Id.* We disagree.

As the district court noted, it is "extremely unlikely" that Jiminez's testimony denying any knowledge of the cocaine could have affected the jury's verdict. Indeed, when Velarde was stopped by the police officer, cocaine was hidden not only in the car, but on his person. Moreover, as the district court observed, had Jiminez testified that Velarde had travelled to Florida to purchase $90,000 worth of cocaine, that testimony certainly would have further implicated Velarde, by directly linking him to the purchase of the cocaine. Velarde has not established a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different, *see Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, and therefore, on the prejudice prong alone, has failed to satisfy the *Strickland* standard. *See United States v. Slaughter*, 900 F.2d 1119, 1124–25 (7th Cir.1990).

Although we are not obligated to address both prongs, *United States v. Fakhoury*, 819 F.2d 1415, 1424 (7th Cir.1987), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988), we also observe for the sake of thoroughness that the decision of Velarde's counsel not to pursue the issue can be viewed as a reasonable tactical decision given the fact that Jiminez's out-of-court statements further implicated Velarde. Indeed, Velarde's attorney admitted as much in moving for the mistrial, *see* Tr. at 184 ("I mean, good gravy, Judge, this is all for [the government's] benefit. Here we're going to testify now that my pal Carlos brought $90,000 down to this guy."), and further stated that he might withdraw the mistrial motion if the court admonished Jiminez of his rights and Jiminez chose not to testify. *Id.* at 186. The actions of Velarde's attorney in choosing not to draw attention to Jiminez's out-of-court statements—statements which further implicated Velarde—were within the realm of reasonable trial strategy. Velarde has presented no ground which would lead us to conclude that his counsel's strategy was so deficient as to deprive him of the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ Velarde also contends that his attorney rendered ineffective assistance of counsel on appeal by failing to raise the issue of the alleged perjury. According to Velarde, Jiminez's out-of-court statements were the "most significant appellate issue," Appellant's Br. at 32, and had the issue been raised on direct appeal he would have received a new trial. *Id.* at 34. The specific acts of appellate counsel that form the basis of Velarde's ineffective assistance claim, *see Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066 (defendant must identify the specific acts or omissions of counsel that form the basis of ineffective assistance claim), are the failure to raise on appeal the following issues: the trial court's refusal to grant motions for a mistrial or for a new trial; the alleged denial of Velarde's right to confront witnesses when the trial judge refused to allow Jiminez to be recalled to the stand; and the trial court's refusal to

give the jury limiting instructions regarding the allegedly perjured testimony. Appellant's Br. at 32–33. These various alleged omissions, however, fall within the realm of reasonable tactical decisions. As the district court observed, Velarde's counsel "could well have concluded that there was insufficient merit to pursue [the perjury] issue or that pursuing it would have detracted from his arguments regarding the motion to suppress." Slip op. at 6. Moreover, we do not believe Velarde was prejudiced by the failure to raise these issues on appeal.

■ With regard to the failure to appeal the trial court's refusal to grant a new trial, the district court, citing *United States v. Douglas*, 874 F.2d 1145 (7th Cir.), *cert. denied*, 493 U.S. 841, 110 S.Ct. 126, 107 L.Ed.2d 87 (1989), noted that in order to be entitled to a new trial, Velarde would have had to establish that: "1) the prosecution's case included perjured testimony; 2) the prosecution knew, or should have known, of the perjury; and 3) there is any likelihood that the false testimony could have affected the judgment of the jury." *Id.* at 1159 (citing *United States v. Kaufmann*, 803 F.2d 289, 291 (7th Cir.1986)); *see also Holleman v. United States*, 721 F.2d 1136, 1138 (7th Cir.1983) ("[T]o establish a prima facie case that a conviction should be vacated because obtained through the use of perjured testimony, a petitioner must show that the testimony was in fact false and the government used it with actual or constructive knowledge of the falsity."). The use of such testimony is reviewed under an abuse of discretion standard. *Douglas*, 874 F.2d at 1159. Applying the *Douglas* standard, the district court found that even if Jiminez's testimony was indeed perjured, the elements necessary to justify a new trial were not satisfied—the government had no prior knowledge of the perjury and promptly notified the court of the out-of-court statements, and it was "extremely unlikely" that Jiminez's testimony that he was unaware of the presence of the cocaine could have affected the jury—and therefore prejudice had not been established. Slip op. at 6. We agree.

As to the alleged confrontation clause violation resulting from the trial court's refusal to recall Jiminez to the stand, Velarde relies on *United States v. Bourjaily*, 167 F.2d 993 (7th Cir.1948), for the proposition that when a government witness admits to the falsity of his prior testimony, the defendant is entitled to full cross-examination of the witness to determine the underlying motives of the previous testimony. In *Bourjaily*, however, unlike here, the government had played a role in inducing the false testimony and the testimony was material. Here, the government exhibited no bad faith and the testimony was incidental to Velarde's conviction. Furthermore, Velarde neither requested to call Jiminez as his own witness nor attempted to admit Jiminez's out-of-court statements under the various evidentiary rules. *See, e.g.*, Fed.R.Evid. 404(a)(1) (witness unavailability); 803(b)(3) (statement against interest). Moreover, even if the trial court's decision not to recall Jiminez to the stand was incorrect, the error was harmless beyond a reasonable doubt, *see United States v. Kaufmann*, 783 F.2d 708, 709 (7th Cir.1986), and therefore, no prejudice resulted.

Finally, we find no prejudice in the failure to appeal the trial court's refusal to give the jury a limiting instruction revealing Jiminez's perjured testimony. Although Velarde relies on *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), for the proposition that failure to reveal perjured testimony is constitutional error even if the perjury goes only to witness credibility, Appellant's Br. at 22, *Napue* explicitly provides that a state "may not *knowingly* use false evidence, including false testimony." *Id.* at 269, 79 S.Ct. at 1177 (emphasis added). Here, as noted and as Velarde concedes, *see* Appellant's Br. at 15, there was no bad faith on the part of the government; the government did not knowingly use false evidence, and notified the court promptly upon discovering the problem. Velarde attempts to circumvent this distinction by noting that this difference "is irrelevant to the constitutional inquiry," and that "suppression of material evidence justifies a new trial 'irrespec-

tive of the good faith or bad faith of the prosecution,'" Appellant's Br. at 23 (quoting *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1959)), but herein lies another key distinction: Jiminez's testimony was not material. Unlike *Napue*, in which the Court observed that "the record compelled it to hold that the false testimony used by the State in securing the conviction of petitioner may have had an effect on the outcome of the trial," *Napue*, 360 U.S. at 272, 79 S.Ct. at 1179, here we agree with the district court that the allegedly false testimony would not have altered the jury's verdict.

The failure of Velarde's counsel to raise the perjury-related issues on appeal meet neither the performance nor prejudice prong under *Strickland* and, therefore, Velarde's claim of ineffective assistance of appellate counsel fails. Because this failure also means that Velarde cannot establish cause for the procedural default of his remaining claims, which we touched upon in the context of Velarde's ineffective assistance of counsel arguments, we need not further address their merits.

AFFIRMED.