53 F.3d 333
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Crisanto TREVINO, Petitioner-Appellant,
v.
UNITED STATES of America, Respondent-Appellee.
 No. 94-1335.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 26, 1995.*
Decided April 28, 1995.
 ORDER
 
 1
 Crisanto Trevino was convicted of numerous drugs and firearms violations and sentenced to consecutive terms of imprisonment of seventy five months and thirty years. We affirmed Trevino's direct criminal appeal which challenged only the admission of evidence under Federal Rules of Evidence 404(b). No. 91-1737 (Oct. 23, 1992). Trevino now brings this motion pursuant to 28 U.S.C. Sec. 2255 arguing that he was denied effective assistance of counsel at trial and on appeal, the district court erred by sentencing Trevino to the mandatory minimum of 30 years for firearms possession pursuant to 18 U.S.C. Sec. 924(c)(1), and Sec. 924(c)(1) is unconstitutional. After reviewing the record, see Granada v. United States, No. 94-2987 (7th Cir. Mar. 23, 1995), we AFFIRM for the reasons stated in the attached opinion of the district court.
 
 ATTACHMENT
 
 2
 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS
 
 EASTERN DIVISION
 
 3
 UNITED STATES OF AMERICA, Plaintiff,
 
 
 4
 v.
 
 
 5
 CRISANTO TREVINO, Defendant.
 
 
 6
 Case No. 93 C 5283.
 
 MEMORANDUM OPINION AND ORDER
 MARVIN E. ASPEN, District Judge:
 
 7
 Petitioner Crisanto Trevino ("Trevino"), pursuant to 28 U.S.C. Sec. 2255, petitions this Court to vacate his conviction on drug and weapons charges and to set aside or amend his sentence. Trevino asserts that he was denied effective assistance of counsel both at the trial and appellate stage, that this Court erred in applying 18 U.S.C. Sec. 924(c)(1), and that Sec. 924(c)(1) violates the Constitution. For the reasons set forth below, we deny Trevino's petition.
 
 I. Factual Background
 
 8
 On November 5, 1990, Trevino was convicted in this Court of nine separate offenses: possession of cocaine and heroin with intent to distribute (Counts I and II), using and carrying firearms in relation to a drug trafficking offenses (Counts III and IV), possession of firearms as a convicted felon (Count V), possession of a machine gun and a hand grenade (Counts VI and VII), and possession of an unregistered machine gun and hand grenade (Counts VIII and IX). The core of the government's case against Trevino derived from evidence obtained from two separate searches of Trevino's home, conducted pursuant to search warrants obtained in reliance on information gained from a confidential informant.
 
 
 9
 The evidence at trial established that on May 1, 1990, police and government agents entered Trevino's home in Chicago and began conducting a search pursuant to a warrant. Before the agents finished, Trevino informed them that firearms could be found in a locked basement room. When Trevino refused to open the door to the room, an agent pried it open and found approximately 70 grams of "cut" heroin and cocaine on a desk. Looking further, the agents discovered five guns around the room (including a loaded AK-47 assault rifle[1] on top of the desk and a loaded handgun hanging on a hook in the kneewell of the desk), a hand grenade, and various items used in "cutting," measuring and otherwise preparing narcotics.
 
 
 10
 At this point, the agents read Trevino his rights and arrested him. During the encounter, both Trevino and his wife made several statements tying Trevino to the locked room and its contents. The day after his arrest, and before execution of the second search warrant, Trevino voluntarily visited ATF agents and made additional incriminating statements linking himself to the weapons found in the locked room.
 
 
 11
 In a pretrial motion, Trevino's trial counsel, Eugene Steingold ("Steingold"), sought a Franks hearing and moved for production of the confidential informant on the grounds that the applications and affidavits for the search warrants contained false statements. After full briefing, we denied both of Trevino's requests. At trial, Steingold made no further objections to the searches, nor did he object to the admission of any of Trevino's statements. However, trial counsel against contested the search warrants in a post-trial motion.
 
 
 12
 After his conviction, this Court sentenced Trevino to 75 months incarceration for Counts I and II, and Counts IV through IX of the superseding indictment. For his conviction on Count III--using or carrying firearms and a machine gun in relation to a drug trafficking offense--we sentenced petitioner to 30 years in prison, as mandated by 18 U.S.C. Sec. 924(c)(1). With fresh appointed counsel, Kathleen Zellner ("Zellner"), Trevino appealed his conviction to the Seventh Circuit. Although Trevino allegedly exhorted Zellner to raise additional issues on appeal, in fact she only argued that this Court abused its discretion in admitting certain evidence under Federal Rules of Evidence 404(b). The Seventh Circuit disagreed and affirmed the conviction. Shortly thereafter and proceeding pro se, Trevino filed this Sec. 2255 petition.
 
 II. Discussion
 
 13
 Generally, a Sec. 2255 petitioner may only assert claims that have already been raised on appeal. However, if he can show "both good cause for his failure to raise the issue on direct appeal and actual prejudice from the newly-asserted errors," then he may overcome this procedural bar. Bond v. United States, 1 F.3d 631, 634 (7th Cir.1993). Additionally, the Seventh Circuit has ruled that a petitioner may raise a claim of ineffective assistance of counsel for the first time in a habeas petition if the claim is based on extrinsic evidence, rather than solely on the trial record.[2] Id.; United States v. Taglia, 922 F.2d 413, 418 (7th Cir.1991). In this case, Trevino failed to raise any of the present issues on direct appeal. Trevino asserts, however, that he sought to raise these claims on appeal, but was foiled by uncooperative and ineffective appellate counsel, thus dissipating any procedural default. Furthermore, Trevino avers that his ineffective assistance of trial counsel claim is supported by extrinsic evidence, justifying any decision not to raise the issue on appeal. Because of its centrality to a determination of whether Trevino's claims are properly before us, we turn first to his charge that he received ineffective appellate counsel.
 
 
 14
 A. Ineffective Assistance of Appellate Counsel
 
 
 15
 In order to establish ineffective assistance of counsel, either at trial or on appeal, a defendant must demonstrate that (1) his attorney's performance fell "below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance," and (2) that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 690, 694, 104 S.Ct. 2052, 2064, 2065, 2068, 80 L.Ed.2d 674 (1977); Caicedo v. United States, Nos. 92 C 931, 88 CR 620-2, 1992 WL 186232 at * 5 (N.D.Ill. July 27, 1992) (defendants claiming ineffective assistance of appellate counsel must satisfy both prongs of the Strickland test). Petitioners must overcome a strong presumption that counsel is effective. Indeed, "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." Taglia, 922 F.2d at 417-18. Here, Trevino claims that, despite his request, his appellate counsel refused to raise the ineffectiveness of trial counsel or to challenge the constitutionality of the 30 year mandatory minimum sentence under Sec. 924(c)(1).
 
 
 16
 It is axiomatic that appellate counsel need not advance every argument proposed by her client. See, e.g., Evitts v. Lucey, 469 U.S. 387, 394, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985) ("[An] attorney need not advance every argument, regardless of merit, urged by the appellant."). Accordingly, failure to press issues suggested by a defendant does not necessarily mean that counsel's advocacy was lacking. See Caicedo, 1992 WL 186232 at * 5. To be sure, while attorneys are obligated to represent their client's interests, they are not mere mouthpieces. Instead, advocates have a responsibility to exercise their independent judgment to assess and promote meritorious claims with a chance of succeeding.
 
 
 17
 Trevino's counsel cannot be faulted for deciding not to raise additional arguments on appeal in this instance. As discussed below, see Discussion at IIB, there is no credible basis for Trevino's charge that his trial counsel performed below constitutionally required levels. Moreover, there are no compelling legal grounds for challenging the 30-year mandatory minimum sentence associated with Sec. 924(c)(1). Because the Supreme Court has specifically held similar mandatory sentence requirements to satisfy constitutional demands, it was reasonable for Zellner to abandon as frivolous any challenge to the mandatory minimum. See Harmelin v. Michigan, --- U.S. ----, 111 S.Ct. 2680 (1991) (Court expressly rejected the notion that the Eighth Amendment prohibits disproportionate sentences). Accordingly, Steingold's decision not to press these issues on appeal does not fall outside the bounds of reasonable representation and does not supply "cause" for Trevino's failure to raise on appeal the issues which comprise the basis for the present petition. Because Trevino's claim of ineffective assistance of appellate counsel fails, petitioner cannot establish cause for the procedural default of his remaining claims. See Velarade v. United States, 972 F.2d 826, 830 (7th Cir.1992) ("Because this failure [to establish ineffective assistance of appellate counsel] also means that Velarde cannot establish cause for the procedural default of his remaining claims, which we touched upon in the context of Velarde's ineffective assistance of counsel arguments, we neet not further address their merits."). Thus, we need not address the merits of Trevino's claims that Sec. 924(c)(1) violates the constitution and that this Court erred in applying the mandatory minimum in this case. Id. However, given Trevino's contention that his ineffective assistance of trial counsel claim depends upon extrinsic evidence, we may not so quickly dispense with that charge.
 
 B. Ineffective Assistance of Trial Counsel
 
 18
 Several ostensibly "glaring" errors anchor Trevino's claim that his trial counsel's performance was deficient. Trevino contends that his trial counsel should have moved to suppress the evidence gathered pursuant to the search warrants and the statements made by Trevino at the time of arrest, and should have challenged the constitutionality of the 30 year mandatory minimum sentence. As noted above, while Trevino has been unable to establish cause for procedurally defaulting this claim, he indicates that the presence of extrinsic evidence justifies his failure to raise this claim on appeal.
 
 
 19
 Although he suggests that extrinsic evidence undergirds his ineffective assistance claim, Trevino neglects to direct us to any such evidence. The only non-record evidence mentioned consists of Trevino's own entreaties that Steingold make certain of the "overlooked" objections. While these pleas assuredly do not appear on the record, this is not the sort of extrinsic evidence that justifies a decision not to appeal. Simply put, evidence that Trevino urged Steingold to make the enumerated objections sheds no light on Steingold's reasons for declining to do so. Accordingly, regardless of this "extrinsic evidence," a reviewing court would be left to the record in evaluating the reasonableness of Steingold's conduct. In the absence of any meaningful non-record evidence, we must conclude that, by failing to raise his ineffective assistance claim on appeal, Trevino defaulted it. See Bond, 1 F.3d at 635 ("Only if there is a need to embellish the picture of trial counsel's performance with extrinsic evidence will we excuse the failure to raise the claim on direct appeal.") (citing Taglia, 922 F.2d at 418-19).
 
 
 20
 In any event, it is clear that Trevino cannot establish any prejudice in connection with his ineffective assistance claim. First, Trevino's charge that Steingold neglected to object to the introduction of evidence obtained in the first search is flatly contradicted by the record. While Steingold did not challenge this evidence at trial, he attacked the validity of the search warrant in both pre- and post-trial motions.[3] Failure to object to the evidence at trial, then, provides no ground for an ineffective assistance claim. Indeed, any objection at trial would have been redundant and almost certainly fruitless.
 
 
 21
 Similarly, the record contradicts Trevino's assertion that his counsel fell below reasonable standards of professional conduct by failing to move to suppress statements made by Trevino at the time of arrest. According to Trevino, some of his statements to the agents were made prior to receiving Miranda warnings and others were made after he asked to see his attorney. The statements in question linked Trevino to the locked room in the basement. Under these circumstances (assuming them to be true), one might ordinarily expect a defense attorney to seek suppression of the statements in question. As the government points out, however, additional factors suggest that Steingold's decision not to make such a motion was part of a purposeful and reasonable trial strategy.
 
 
 22
 A key component of Trevino's defense consisted of creating doubt in the jury's mind about whether Trevino controlled the locked room in the basement. Central to this scheme was the testimony of Trevino's wife, Joanna, who could (and did) testify that the Trevinos leased the basement to a tenant. Like her husband, Joanna had made prior statements linking Trevino to the locked room in the basement. Accordingly, these damaging statements would undoubtedly be admitted for the purpose of impeaching Joanna's testimony. Since virtually identical information was likely to be admitted regardless, Steingold may well have concluded that little was to be gained by moving to suppress Trevino's statements. On the other hand, there was potentially much to lose. In a suppression hearing, Trevino would likely have had to take the stand. Depending upon his testimony and the outcome of the trial, this situation created the risk that Trevino might expose himself to a perjury charge. Under the particular circumstances of this case, then, Steingold's decision not to suppress Trevino's statements constitutes a reasonable trial strategy.
 
 
 23
 Trevino's claim that Steingold unreasonably failed to challenge the constitutionality of the mandatory minimum sentence set forth in Sec. 924(c)(1) is likewise unavailing. As discussed above, the Supreme Court has unequivocally ruled that the Eighth Amendment does not guarantee proportional sentences. Accordingly, any objection predicated on the notion that the mandatory minimum established by Congress is excessive would have flown in the face of clearly established (and contrary) precedent. Steingold's decision not to pursue such a course certainly does not render his advocacy deficient.[4]
 
 
 24
 In light of the foregoing analysis, we also deny Trevino's request for an evidentiary hearing. See Politte v. United States, 852 F.2d 924, 931 (7th Cir.1988) (" 'Where a record conclusively demonstrates that defendant is entitled to no relief on his Sec. 2255 petition to vacate sentence, a full evidentiary hearing is not required.' " (quoting United States v. Robinson, 585 F.2d 274, 280 (7th Cir.1978), cert. denied, 441 U.S. 947, 95 S.Ct. 2171, 60 L.Ed.2d 1051 (1979)). Trevino offers no claims necessitating further evidence, and, more significantly, the record demonstrates that he is not entitled to relief.
 
 III. Conclusion
 
 25
 For the foregoing reasons, we deny Trevino's petition. It is so ordered.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 According to Trevino, the assault rifle was not an actual AK-47, but was merely "Ak-47-like."
 
 
 [2]
 The Seventh Circuit reasoned that an ineffective assistance of counsel claim based on evidence outside the trial record was more efficiently raised in a collateral attack, since an appellate court would have to remand a meritorious claim to the trial court for further factual elucidation. Bond, 1 F.3d at 635
 
 
 [3]
 Trevino fails to address the fact that his counsel filed both pre- and post-trial motions assailing the search warrant. Given the government's forthright presentation of and reliance on this fact, we can only assume Trevino's silence on the issue, and his decision to persist in his vehement criticism of counsel's failure to object at trial, stems either from ignorance of criminal procedure or lack of meritorious response. In either event, counsel's efforts on Trevino's behalf carry the day
 
 
 [4]
 Trevino does not assert that Steingold's representation fell below reasable professional standards by failing to challenge the prosecution's characterization of the machine gun as a fully automatic weapon, choosing instead to raise this contention as an independent basis for relief. Although we, therefore, need not address this issue, we note that record contradicts any such claim. It is clear from the record that the government presented a weapons expert who testified that he tested the AK-47 (or, in Trevino's terminology, the "AK-47-like" weapon), and determined that it was fully functional and capable of firing single shot, semi-automatic, and fully-automatic rounds. In the face of this testimony, it is altogether possible that Steingold chose not to expend his energies and resources on contesting solid evidence, but to concentrate on weaker areas of the government's case. This trial tactic certainly falls well within the bounds of acceptable advocacy and cannot serve as a foundation for an ineffective assistance claim