IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs August 15, 2017

**TERRENCE MCDONALD v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 107442   Steven Wayne Sword, Judge**

_____

**No. E2016-02565-CCA-R3-PC**

_____

The Petitioner, Terrence McDonald, was convicted of four counts of aggravated rape and one count of reckless endangerment.  He appeals the post-conviction court's denial of relief and argues that trial counsel provided ineffective assistance of counsel.  Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court for Knox County Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellant, Terrence Lamont McDonald.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted by the Knox County Grand Jury for four counts of aggravated rape and one count of aggravated assault.  The charges stemmed from the Petitioner's violent sexual assault of his wife, the victim.  This court summarized the facts underlying the Petitioner's charges in its opinion affirming the Petitioner's convictions and sentence on direct appeal.  See State v. Terrence Lamont McDonald, No. E2013-02524-CCA-R3-CD, 2015 WL 154251 (Tenn. Crim. App. Jan. 13, 2015), perm. app. denied (Tenn. May 14, 2015).  In short, on the morning of January 22, 2012, after an argument between the Petitioner and the victim, the Petitioner held a knife to the victim's throat and threatened to "cut [her] voice box out."  Later that day, after another argument, the Petitioner "grabbed [the victim's] arm and pulled her . . . down the stairs."  The

Petitioner then forced the victim on the couch and demanded sex, which the victim refused. The victim testified that the Petitioner "punched [her] in the chest" and raped her both vaginally and anally. The victim also testified that the Petitioner "struck her in the back of the head" during the sexual assault and left bruises and marks on the victim's body. The victim's testimony was corroborated by a forensic nurse examiner who confirmed the victim's injuries were consistent with the described assault and rapes.

After the Petitioner was arrested, he provided a statement to police admitting to sexually penetrating the victim both vaginally and anally, on the evening of January 22, 2012, and stated that he "may have hurt [the victim]." The Petitioner also acknowledged that he and the victim had been arguing earlier in the day, however, the Petitioner claimed that the sexual acts had been consensual. The jury returned a guilty verdict of the lesser included offense of reckless endangerment but found the Petitioner guilty of the aggravated rapes. The trial court imposed an effective sentence of twenty-five years' imprisonment.

On February 29, 2016, the Petitioner filed a pro se petition for post-conviction relief alleging that his trial counsel provided ineffective assistance of counsel. On March 11, 2016, the post-conviction court appointed post-conviction counsel, who later filed a supplemental petition for post-conviction relief.

At the post-conviction hearing, the Petitioner testified that trial counsel failed to investigate and present an alibi defense. Specifically, the Petitioner claimed that he met with his brother and that he was at a McDonald's using the wireless internet on the day of the offenses. The Petitioner asserted that this evidence would show he was not at his apartment at the time his wife claimed the knife incident occurred. The Petitioner also claimed that trial counsel failed to visit the Petitioner's apartment where the offenses occurred and that, if counsel had "seen the scenery, the couch, the position where everything was," it would prove that the victim's testimony about the sexual assaults was "improbable." Likewise, the Petitioner said that trial counsel failed to interview his neighbors, who would have heard the victim screaming because the walls of his apartment were "very thin." The Petitioner also asserted that trial counsel said he "could not ask probing questions" of the victim because she had recently lost her leg.

Trial counsel testified that the Petitioner's defense was that his wife was lying about the knife incident and that the sexual acts were consensual. Trial counsel described the Petitioner's account of the knife incident, which occurred during an argument between the Petitioner and the victim. Counsel said that the Petitioner "had an ornamental dagger in a sheath. He unsheathed it. He didn't hold it to her throat or anything. He just held it out and said, 'You want me to cut your voice box,' or something like that." Trial counsel said he did not want the Petitioner to testify about the

knife incident because "if he were to say how it happened, that's still potentially an aggravated assault." Because the Petitioner admitted that the assault took place, the only issue trial counsel noted was that the Petitioner believed the incident occurred in the afternoon and the victim testified that it occurred in the morning.

Trial counsel confirmed that he did not visit the Petitioner's apartment. He was not sure who lived in the apartment or if the apartment was in the same condition with the same furnishings by the time counsel was assigned the Petitioner's case. Trial counsel was aware that the Petitioner believed "there was an issue about the shape of the couch, the nature of the couch, and had [the victim] been bent over the couch in a certain way, he wouldn't have been able to penetrate her." Trial counsel also confirmed that he did not interview any of the Petitioner's neighbors because the Petitioner had already admitted that the sexual acts occurred. Regarding the victim's cross-examination, trial counsel said that he "wouldn't be aggressive to a witness anyway in a case like this," especially considering that the victim was a sympathetic witness who had recently lost her leg. Trial counsel believed that he could still "present[ ] a motive as to why [the victim] would be lying, without . . . having to attack her per se."

The post-conviction court denied relief by order on November 28, 2016, and the Petitioner timely appealed.

## ANALYSIS

The Petitioner argues that he received ineffective assistance of counsel when trial counsel (1) failed to investigate and present an alibi defense; (2) failed to visit the Petitioner's apartment and interview his neighbors; and (3) failed to effectively cross-examine the victim. The State responds to each allegation and argues that the post-conviction court properly denied relief. Upon review, we agree with the State.

We begin our review of these issues by acknowledging that post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as

a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In Vaughn, the Tennessee Supreme Court repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [Petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89. However, we note that this "'deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (quoting Goad, 938 S.W.2d at 369).

First, the Petitioner contends that trial counsel failed to investigate and present an alibi defense. The Petitioner appears to argue that the alibi defense would have supported his claim "that the alleged [a]ggravated [a]ssault had not occurred." However, the post-conviction court accredited trial counsel's testimony that the Petitioner admitted the assault did occur and that he both brandished a knife at the victim and threatened to cut her. Although the Petitioner claims that the event did not occur exactly as the victim testified, by admitting to the events involved in the underlying charge the Petitioner made any issue about the precise timing of the event irrelevant. We also note that the Petitioner was convicted of the lesser included offense of reckless endangerment, not aggravated assault, and that he never presented testimony from his brother or any other proof regarding his alibi defense. Under these circumstances, trial counsel was not ineffective for failing to present an alibi defense.

Next, the Petitioner argues that trial counsel provided ineffective assistance by failing to visit the Petitioner's apartment and interview the Petitioner's neighbors. The post-conviction court noted that the Petitioner's apartment was "in the control of someone not connected to the case while the matter was pending" and that the furniture in the apartment would have been completely different. Furthermore, we agree with the post-conviction court that the Petitioner's claim regarding the furniture layout or shape of the couch is without merit because "[t]he defense was one of consent, not physical impossibility." Regarding trial counsel's failure to interview the neighbors, the Petitioner admitted to arguing with the victim on the day of the offenses and, accordingly, any neighbors' testimony that they did not hear any screaming would have been unlikely to impact the victim's credibility and would have contradicted the Petitioner's own testimony. Further, the Petitioner never presented any neighbors' testimony or any proof as to what the neighbors would have said. Accordingly, the Petitioner has failed to

establish by clear and convincing evidence that counsel was deficient or that he was prejudiced by any alleged deficiency.

Finally, the Petitioner asserts that trial counsel inadequately cross-examined the victim and that "a more aggressive [tactic] should have been taken." The Petitioner provides no specifics regarding what questions trial counsel should have asked the victim. As the State notes, challenging trial counsel's demeanor on cross-examination attacks a strategic choice. Trial counsel testified that he believed an overtly aggressive cross-examination of the victim would be ineffective and make her more sympathetic to the jury considering the circumstances of the charges against the Petitioner and because the victim had recently lost her leg. The post-conviction court accredited this assessment, concluding that trial counsel's approach "was reasonable and based upon a sound trial strategy." We agree and note that considerable deference is given to trial counsel when analyzing the effectiveness of counsel's assistance regarding trial strategies. See Wiley v. State, 183 S.W.3d 317, 331-32 (Tenn. 2006); see also Wiggins v. Smith, 539 U.S. 510, 521-22 (2003). The Petitioner has failed to establish deficient performance or prejudice to his case as a result. He is not entitled to relief.

## CONCLUSION

Based on the above reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE